## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No.**_____ |
| ) | |
| **v.** ) | |
| ) | |
| **POWER PERFORMANCE** ) | |
| **ENTERPRISES, INC. and** ) | |
| **KORY BLAINE WILLIS,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### I.    NATURE OF THE ACTION

1.      This is a civil action brought under Sections 203, 204, and 205 of the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. § 7522–7524, seeking injunctive relief and the assessment of civil penalties against Power Performance Enterprises, Inc. ("PPEI") and Kory Blaine Willis ("Mr. Willis") (collectively "Defendants") for violations of the CAA related to Defendants' manufacture and sale of aftermarket products that affect emission controls installed on motor vehicles or motor vehicle engines.

## II.    JURISDICTION

2.      This Court has jurisdiction over the subject matter of and the parties to this action

pursuant to 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Venue is proper in the Western District of Louisiana pursuant to 28 U.S.C.

§§ 1391(b)(2), 1391(c)(2), and 1395(a), as well as Sections 204 and 205 of the Act, 42 U.S.C.

§§ 7523 and 7524, because it is the judicial district in which the Defendants are located, reside,

or are doing business, or in which a substantial part of the alleged violations in the Complaint

occurred.

## III.    DEFENDANTS

4.      PPEI is a closely held Louisiana corporation owned and managed by its President,

Mr. Willis.

5.      PPEI manufactures and sells aftermarket products for motor vehicles equipped

with diesel engines.

6.      PPEI markets its products as products that enhance a motor vehicle's power or

performance, modify a vehicle's fuel economy, or reduce the costs associated with maintaining a

vehicle's emission control system.

7.      PPEI sells its products to individual consumers over the internet through its

website and through sales to other retailers that sell the products to individual consumers.

8.      Mr. Willis is, and was at the relevant times herein, the owner and President of

PPEI.

9.      PPEI resides, is located, and does business in Allen Parish, Louisiana.

10.      Mr. Willis resides in Calcasieu Parish, Louisiana, and does business in Allen

Parish, Louisiana.

11.     Defendants are each a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## IV.     BACKGROUND

12.     This action arises under Title II of the CAA, as amended, 42 U.S.C. §§ 7521–7590, and the regulations thereunder relating to the control of emissions of air pollution from motor vehicles and motor vehicle engines.

### A.  Statutory and Regulatory Objectives

13.     In creating the CAA, Congress found that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2). Congress's purposes in creating the Act were "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution." 42 U.S.C. § 7401(b)(1)–(2).

14.     "Motor vehicle" is defined as "any self-propelled vehicle designed for transporting persons or property on a street or highway." 42 U.S.C. § 7550(2); 40 C.F.R. § 85.1703.

15.     Title II of the CAA and the regulations promulgated thereunder establish stringent standards for the emission of air pollutants from motor vehicles and motor vehicle engines that "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7521(a). These pollutants include, but are not limited to, particulate matter ("PM"), nitrogen oxides ("NO$_x$"), non-methane hydrocarbons ("NMHCs"), and carbon monoxide ("CO"). 42 U.S.C. § 7521(a)(3)(A).

16.     EPA has also established National Ambient Air Quality Standards for certain

pollutants, including ozone, $NO_x$, PM, and CO. *See* 40 C.F.R. §§ 50.1–50.19.

17.     PM is a form of air pollution composed of microscopic solids and liquids suspended in air. PM is emitted directly from motor vehicles and is also formed in the atmosphere from the emission of other pollutants, including from motor vehicles.

18.     Ozone is a highly reactive gas that is formed in the atmosphere from emissions of other pollutants, including from motor vehicles.

19.     $NO_x$ and NMHCs are reactive gasses that contribute to the formation of PM and Ozone.

20.     Exposure to PM and Ozone is linked to respiratory and cardiovascular health effects as well as premature death. Children, older adults, people who are active outdoors (including outdoor workers), and people with heart or lung disease are particularly at risk for health effects related to PM or Ozone exposure.

21.     CO is a highly toxic gas that can cause headaches, dizziness, vomiting, nausea, loss of consciousness, and death. Long-term exposure to CO has been associated with an increased risk of heart disease.

### B.  Acts Prohibited by the Clean Air Act, 42 U.S.C. § 7522(a)(3)(B)

22.     Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), makes it a prohibited act for "any person to manufacture or sell, or offer to sell, or install any part or component intended for use with, or as a part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."

23.     Persons violating Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), are subject to injunctive relief pursuant to 42 U.S.C. § 7523.

24.     Persons violating Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B), are subject to civil penalties of up to $3,750 for each violation occurring on or after January 13, 2009, through November 2, 2015, and up to $5,179 for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022, in accordance with Section 205(a) of the CAA, 42 U.S.C. § 7524(a) as modified by 40 C.F.R. § 19.4 (2022); 87 Fed. Reg. 1676, 1679 (Jan. 12, 2022).

25.     Pursuant to 42 U.S.C. § 7524(a), each part or component manufactured, sold, offered for sale, or installed in violation of Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B) is a separate violation.

### C.  EPA's Certificate of Conformity Program for New Motor Vehicles and Motor Vehicle Engines

26.     Manufacturers of new motor vehicles or motor vehicle engines must apply for and obtain a certificate of conformity ("COC") from EPA to sell, offer to sell, or introduce or deliver for introduction into commerce any new motor vehicle or motor vehicle engine in the United States. 42 U.S.C. § 7522(a)(1).

27.     To obtain a COC, the original equipment manufacturer ("OEM") must demonstrate that the motor vehicle or motor vehicle engine will conform to established emissions standards for PM, $NO_x$, NMHC, CO, and other pollutants during a motor vehicle or motor vehicle engine's useful life. 42 U.S.C. § 7525(a)(2); *see* 40 C.F.R. §§ 86.007-30(a)(1)(i), 86.1848-01(a)(1).

28.     The COC application must describe, among other things, the emissions-related elements of design of the motor vehicle or motor vehicle engine. *See* 40 C.F.R. § 86.094-

21(b)(1) ("The application . . . shall include the following: . . . a description of [the vehicle's] . . . emission control system and fuel system components."); *see also* 40 C.F.R. § 86.1844-01(d)–(e).

29.     Once issued by EPA, a COC only covers those new motor vehicles or motor vehicle engines that conform in all material respects to the specifications provided to EPA in the COC application for such vehicles or engines. 40 C.F.R. § 86.1848-01(c)(6).

### D.  Emissions-related Elements of Design in Motor Vehicles and Motor Vehicle Engines

30.     An "element of design" is "any control system (i.e., computer software, electronic control system, emission control system, computer logic), and/or control system calibrations, and/or the results of systems interactions, and/or hardware items on a motor vehicle or motor vehicle engine." 40 C.F.R. § 86.1803-01.

31.     OEMs install a variety of hardware and software elements of design in motor vehicles and motor vehicle engines that control emissions of pollutants in order to comply with the emissions standards established by regulation under the CAA and obtain certification, hereinafter referred to as "Emissions-related Elements of Design."

32.     Pursuant to 42 U.S.C. § 7521(m), the OEM is required to install an Onboard Diagnostics ("OBD") System on motor vehicles that must monitor, detect, and report malfunctions of all monitored Emissions-related Elements of Design. 40 C.F.R. §§ 86.007-17, 86.010-18, 86.1806-05.

33.     The OBD System monitors and detects malfunctions of Emissions-related Elements of Design through a network of sensors installed throughout the motor vehicle and motor vehicle engine.

34.     When the OBD System detects a malfunction of an Emissions-related Element of Design, it must illuminate the vehicle's Malfunction Indicator Light ("MIL") on the dashboard

and record a Diagnostic Trouble Code ("DTC"). *See* 40 C.F.R. § 86.1806-05(b)–(e).

35.     The OBD System is an Emissions-related Element of Design.

36.     Exhaust Gas Recirculation ("EGR") Systems are Emissions-related Elements of Design that reduce $NO_x$ emissions by recirculating a portion of exhaust gas to the engine combustion chamber, thereby reducing peak engine combustion temperature and reducing the formation of $NO_x$ emissions.

37.     "Aftertreatment" refers collectively to the Emissions-related Elements of Design "mounted downstream of the exhaust valve . . . whose design function is to reduce emissions in the engine exhaust before it is exhausted to the environment." *See* 40 C.F.R. § 1068.30. Diesel Particulate Filters ("DPFs"), Diesel Oxidation Catalysts ("DOCs"), Selective Catalytic Reduction ("SCR") Systems, and $NO_x$ Adsorption Catalysts ("NACs") are all part of Aftertreatment.

38.     Aftertreatment Emissions-related Elements of Design are contained in OEM-installed stock exhaust pipes.

39.     DPFs are Emissions-related Elements of Design that reduce the level of PM pollution contained in engine exhaust gas.

40.     DOCs are Emissions-related Elements of Design that reduce CO and NMHC emissions by promoting the conversion of those pollutants into less harmful gases.

41.     SCR Systems are Emissions-related Elements of Design that reduce $NO_x$ emissions by chemically converting exhaust gas that contains $NO_x$ into nitrogen and water through the injection of diesel exhaust fluid.

42.     NACs are Emissions-related Elements of Design that reduce $NO_x$ emissions by chemically adsorbing $NO_x$ from exhaust gas.

43.     OEMs set software parameters, also known as calibrations, that control, among other things, engine combustion and Aftertreatment performance (hereinafter referred to as "Certified Stock Calibrations"). 40 C.F.R. §§ 86.1803-01. OEMs disclose Certified Stock Calibrations to EPA on their application for a COC for each vehicle model because they are part of a motor vehicle's overall emissions control strategy. Certified Stock Calibrations that must be included on the COC application include "fuel pump flow rate, . . . fuel pressure, . . . EGR exhaust gas flow rate, . . . and basic engine timing." 40 C.F.R. § 86.1844-01(e)(2); *see also* 40 C.F.R. pt. 85 app. VIII (listing vehicle and engine parameters and specifications); 40 C.F.R. pt. 86 app. VI (listing vehicle and engine components). Certified Stock Calibrations are Emissions-related Elements of Design.

44.     Motor vehicles are equipped with Electronic Control Units ("ECUs"), which are computers that monitor and control vehicle operations, including the operation of Emissions-related Elements of Design described in Paragraphs 32–43. OBD Systems and other Emissions-related Elements of Design operate in conjunction with ECUs.

45.     The Emissions-related Elements of Design described in Paragraphs 32–43 are installed in motor vehicles or motor vehicle engines in compliance with Title II of the CAA and the regulations thereunder. *See, e.g.*, 42 U.S.C. § 7521 (setting emission and OBD standards and directing EPA to establish standards by regulation); 40 C.F.R. § 86.007-11 (establishing emission standards for 2007 and later diesel heavy-duty engines and vehicles); 40 C.F.R. § 86.1844-01(d)–(e) (listing information requirements for COC applications, including calibration information), 40 C.F.R. § 86.004-25(a)(6) (defining "critical emissions-related components").

### E.  The Types of Aftermarket Products at Issue

46.     Third-party manufacturers, including Defendants, have developed products that are designed to alter a vehicle's power, performance, or fuel economy, or reduce the costs related to maintaining a vehicle's Emissions-related Elements of Design (hereinafter "Aftermarket Products").

47.     Many Aftermarket Products enhance a vehicle's power, performance, or fuel economy, or reduce maintenance costs, by altering, replacing, or disabling OEM-installed elements of design, including Emissions-related Elements of Design.

### *Hardware Products*

48.     Some Aftermarket Products are hardware products that physically interfere with, replace, or remove, Emissions-related Elements of Design (hereinafter, "Hardware Products").

49.     Some Hardware Products interfere with exhaust recirculation in the EGR System (e.g., "blocker plates"). These Hardware Products are hereinafter referred to as "EGR Delete Hardware Products."

50.     Some Hardware Products replace all or part of the Aftertreatment system, physically removing the DOCs, DPFs, NACs, OBD Sensors, and/or SCR System (e.g., "straight pipes," "race pipes," or "test tubes"). These Hardware Products are hereinafter referred to as "Aftertreatment Delete Hardware Products."

### *Tunes*

51.     Some Aftermarket Products are electronic software products that alter or overwrite aspects of a motor vehicle's ECU and/or OBD System, thereby affecting Emissions-related Elements of Design (hereinafter, "Tunes").

52.     Some Tunes manipulate the ECU and/or OBD System and, in so doing, bypass,

defeat, or render inoperative the EGR System, DPFs, DOCs, SCR System, and/or other Aftertreatment. These Tunes are hereinafter referred to as "Delete Tunes." Some Delete Tunes work in conjunction with Hardware Products by manipulating the monitoring function of the OBD System so that it will not detect those Hardware Products or the removal of a vehicle's Emissions-related Elements of Design.

53.     Other Tunes manipulate a vehicle's ECU and/or the monitoring function of the OBD System and, in doing so, bypass, defeat, or render inoperative Certified Stock Calibrations such as fuel pump flow rate, fuel pressure, EGR exhaust gas flow rate, and basic engine timing. These Tunes are hereinafter referred to as "Calibration Tunes."

## V.     GENERAL ALLEGATIONS

54.     On December 14, 2016, EPA issued a Notice of Violation ("NOV") to PPEI setting forth its determination that PPEI had committed 24,311 violations of the Section 203(a)(3)(B) of the CAA by selling "parts or components for motor vehicles and engines that bypass, defeat, or render inoperative elements of design of those vehicles or engines that were installed by the original equipment manufacturer in order to comply with the CAA emission standards."

55.     At the relevant times herein, Mr. Willis designed, developed, and manufactured Delete Tunes and Calibration Tunes sold by PPEI.

56.     At the relevant times herein, Mr. Willis had ultimate decision-making authority at PPEI as its President.

57.     At the relevant times herein, Mr. Willis was in a position to prevent repeated violations of the CAA, but he failed to do so.

58.     Mr. Willis is a responsible corporate officer of PPEI for the CAA violations

alleged in this Complaint.

## VI.      FIRST CLAIM FOR RELIEF
### *Violations for the Sale of Subject EGR Delete Hardware Products*

59.      The United States re-alleges Paragraphs 1–58 above as is fully set forth herein.

60.      Between August 15, 2013 and June 4, 2018, and upon information and belief continuing until September 2019, Defendants sold numerous products referred to herein as "Subject EGR Delete Hardware Products."

61.      Defendants advertised that certain of the Subject EGR Delete Hardware Products can be "install[ed] on your favorite Cummins diesel engine in place of the factory-installed EGR system."

62.      The product name for certain of the Subject EGR Delete Hardware Products includes the phrase "EGR Delete."

63.      The Subject EGR Delete Hardware Products are intended for use with motor vehicles or motor vehicle engines.

64.      The Subject EGR Delete Hardware Products use blocker plates, replacement tubes, or other hardware to interfere with the recirculation of exhaust gas back into the engine combustion chamber, thereby defeating or rendering inoperative the vehicle's EGR System.

65.      A principal effect of each Subject EGR Delete Hardware Product is to disable, defeat, or render inoperative a vehicle's EGR System.

66.      EGR Systems are Emissions-related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

67.      Defendants knew or should have known that the Subject EGR Delete Hardware Products were being offered for sale or installed for such use or put to such use.

68.      Each unit of the Subject EGR Delete Hardware Products manufactured, sold,

offered for sale, or installed and intended for use with, or as a part of, any motor vehicle or motor

vehicle engine (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the

CAA, 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a).

69.     Unless enjoined, Defendants may continue to manufacture, sell, and offer to sell

Subject EGR Delete Hardware Products.

70.     Each Defendant is liable to the United States for injunctive relief and civil

penalties of up to $3,750 for each violation of Section 203(a)(3)(B) occurring between

January 13, 2009 and November 2, 2015, and injunctive relief and civil penalties of up to $5,179

for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022,

in accordance with Section 205(a) of the CAA, 42 U.S.C. § 7524(a) as modified by 40 C.F.R. §

19.4 (2022); 87 Fed. Reg. 1676, 1679 (Jan. 12, 2022).

## VII.     SECOND CLAIM FOR RELIEF
### *Violations for the Sale of Subject Aftertreatment Delete Hardware Products*

71.     The United States re-alleges Paragraphs 1–58 above as is fully set forth herein.

72.     Between August 15, 2013 and June 4, 2018, and upon information and belief

continuing until September 2019, Defendants sold numerous products referred to herein as

"Subject Aftertreatment Delete Hardware Products."

73.     The product manuals for certain of the Subject Aftertreatment Delete Hardware

Products illustrate how, once installed, the products replace OEM-installed stock exhaust pipes.

74.     Defendants' advertisements for certain of the Subject Aftertreatment Delete

Hardware Products state that the products "must be used with . . . delete tuning."

75.     Defendants' product manuals for certain of the Subject Aftertreatment Delete

Hardware Products illustrate that the products replace the complete Aftertreatment system on

vehicles certified with DOC, DPF, NAC, and/or SCR systems.

76.     The product names for certain of the Subject Aftertreatment Delete Hardware Products include the phrases "No Bungs" or "Without Muffler."

77.      "Without Muffler" indicates that the Subject Aftertreatment Delete Hardware Product does not contain DOCs, DPFs, SCR Systems, and/or NACs. "No Bungs" indicates that the Aftertreatment Delete Hardware Product is designed for use without the sensors necessary for the OBD System to monitor whether the Emissions-related Elements of Design are working properly ("bungs").

78.     The Subject Aftertreatment Delete Hardware Products are intended for use with motor vehicles or motor vehicle engines covered by EPA-issued certificates of conformity.

79.     The Subject Aftertreatment Delete Hardware Products are replacements for OEM-installed stock exhaust pipes which contain Emissions-related Elements of Design such as DPFs, DOCs, SCR Systems, and/or NACs.

80.     A principal effect of each Subject Aftertreatment Delete Hardware Product is to bypass, defeat, or render inoperative a vehicle's OBD System, DPFs, DOCs, SCR System, and/or NACs.

81.     OBD Systems, DPFs, DOCs, SCR Systems, and NACs are Emissions-related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

82.     Defendants knew or should have known that the Subject Aftertreatment Delete Hardware Products were being offered for sale or installed for such use or put to such use.

83.     Each unit of the Subject Aftertreatment Delete Hardware Products manufactured, sold, offered for sale, or installed and intended for use with, or as a part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of

13

the CAA, 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a).

84.     Unless enjoined, Defendants may continue to manufacture, sell, and offer to sell Subject Aftertreatment Delete Hardware Products.

85.     Each Defendant is liable to the United States for injunctive relief and civil penalties of up to $3,750 for each violation of Section 203(a)(3)(B) occurring between January 13, 2009 and November 2, 2015, and injunctive relief and civil penalties of up to $5,179 for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022, in accordance with Section 205(a) of the CAA, 42 U.S.C. § 7524(a) as modified by 40 C.F.R. § 19.4 (2022); 87 Fed. Reg. 1676, 1679 (Jan. 12, 2022).

## VIII.     THIRD CLAIM FOR RELIEF
### *Violations for the Manufacture and Sale of Subject Delete Tunes*

86.     The United States re-alleges Paragraphs 1–58 above as is fully set forth herein.

87.     Between August 15, 2013 and June 4, 2018, and upon information and belief continuing until September 2019, Defendants manufactured and sold numerous products referred to herein as "Subject Delete Tunes."

88.     The product manuals for certain of the Subject Delete Tunes state that, once installed, the EGR System, DPF, DOC, and/or SCR System will be "disabled" and/or must be "unplugged" for the Tune to operate properly.

89.     Defendants advertised certain of the Subject Delete Tunes as "allow[ing] removal of the DPF system and ALL related sensors."

90.     The Subject Delete Tunes are intended for use with motor vehicles or motor vehicle engines.

91.     The Subject Delete Tunes manipulate a vehicle's ECU and/or OBD System and, in doing so, bypass, defeat, or render inoperative the Certified Stock Calibrations.

92.     The Subject Delete Tunes electronically disable or allow removal of Emissions-related Elements of Design, including OBD Systems, EGR Systems, DPFs, DOCs, SCR Systems, and/or NACs.

93.     A principal effect of at least one component of each Subject Delete Tune is to bypass, defeat, or render inoperative a vehicle's OBD System, Certified Stock Calibrations, EGR System, DPF, DOC, SCR System, and/or NAC.

94.     OBD Systems, Certified Stock Calibrations, EGR Systems, DPFs, DOCs, SCR Systems, and NACs are Emissions-related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

95.     Defendants knew or should have known that the Subject Delete Tunes were being offered for sale or installed for such use or put to such use.

96.     Each copy of the Subject Delete Tunes manufactured, sold, offered for sale, or installed and intended for use with, or as a part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a).

97.     Unless enjoined, Defendants may continue to manufacture, sell, and offer to sell Subject Delete Tunes.

98.     Each Defendant is liable to the United States for injunctive relief and civil penalties of up to $3,750 for each violation of Section 203(a)(3)(B) occurring between January 13, 2009 and November 2, 2015, and injunctive relief and civil penalties of up to $5,179 for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022, in accordance with Section 205(a) of the CAA, 42 U.S.C. § 7524(a) as modified by 40 C.F.R. § 19.4 (2022); 87 Fed. Reg. 1676, 1679 (Jan. 12, 2022).

### IX.     FOURTH CLAIM FOR RELIEF
#### *Violations for the Manufacture and Sale of Subject Calibration Tunes*

99.     The United States re-alleges Paragraphs 1–58 above as is fully set forth herein.

100.     Between August 15, 2013 and June 4, 2018, and upon information and belief continuing until September 2019, Defendants manufactured and sold numerous products referred to herein as "Subject Calibration Tunes."

101.     The Subject Calibration Tunes are intended for use with motor vehicles or motor vehicle engines.

102.     Defendants advertised certain of the Subject Calibration Tunes as replacing fueling-related Certified Stock Calibrations.

103.     The Subject Calibration Tunes manipulate a vehicle's ECU and/or OBD System and, in doing so, bypass, defeat, or render inoperative Certified Stock Calibrations.

104.     A principal effect of at least one component of each Subject Calibration Tune is to bypass, defeat, or render inoperative a vehicle's OBD System and/or Certified Stock Calibrations.

105.     OBD Systems and Certified Stock Calibrations are Emissions-related Elements of Design installed on or in motor vehicles or motor vehicle engines in compliance with Title II of the CAA.

106.     Defendants knew or should have known that the Subject Calibration Tunes were being offered for sale or installed for such use or put to such use.

107.     Each copy of the Subject Calibration Tunes manufactured, sold, offered for sale, or installed and intended for use with, or as a part of, any motor vehicle or motor vehicle engine (or the causing thereof) is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a).

16

108.    Unless enjoined, Defendants may continue to manufacture, sell, and offer to sell Subject Calibration Tunes.

109.    Each Defendant is liable to the United States for injunctive relief and civil penalties of up to $3,750 for each violation of Section 203(a)(3)(B) occurring between January 13, 2009 and November 2, 2015, and injunctive relief and civil penalties of up to $5,179 for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022, in accordance with Section 205(a) of the CAA, 42 U.S.C. § 7524(a) as modified by 40 C.F.R. § 19.4 (2022); 87 Fed. Reg. 1676, 1679 (Jan. 12, 2022).

## X.  RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

A.    Assess civil penalties against PPEI for each violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), in the amount of $3,750 for each violation occurring between January 13, 2009 and November 2, 2015, and up to $5,179 for each violation occurring after November 2, 2015;

B.    Assess civil penalties against Mr. Willis for each violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), in the amount of up to $3,750 for each violation occurring between January 13, 2009 and November 2, 2015, and up to $5,179 for each violation occurring after November 2, 2015;

C.    Permanently enjoin each Defendant from manufacturing, selling, offering to sell, or installing motor vehicle parts or components intended for use with a motor vehicle or motor vehicle engine where a principal effect of such part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with Title II of the CAA;

D.     Order the Defendants to take other appropriate actions to remedy, mitigate, and

offset the harm caused by their alleged CAA violations;

E.     Award the United States its costs in this action; and

F.     Award such other and further relief as the Court may deem just and proper.


Respectfully submitted,



TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


_____
NICOLE VEILLEUX
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington D.C. 20044-7611
(202) 616-8746
nicole.veilleux@usdoj.gov


BRANDON BONAPARTE BROWN
United States Attorney
Western District of Louisiana


JERRY EDWARDS (#30242)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101-3068
(318) 676-3614 // Fax: (318) 676-3642
Email: jerry.edwards@usdoj.gov

OF COUNSEL:

EDWARD KULSCHINSKY
Attorney-Advisor
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, D.C. 20460